**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, ) <br> as subrogee of Giovanni and Kathy Lasso, ) <br>    ) <br>    Plaintiff, ) <br>    ) <br>    v. ) <br>    ) <br> ADT LLC, d/b/a ADT SECURITY ) <br> SERVICES, ) <br>    ) <br>    Defendant. ) | No. 14 C 9494 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant ADT LLC's motion to dismiss the complaint with prejudice, which is granted for the reasons explained below.

## BACKGROUND

This diversity suit arises out of a fire that occurred on October 25, 2013 at the Gurnee, Illinois home of Giovanni and Kathy Lasso. The fire caused severe property damage. (Compl. ¶ 6.) The Lassos had a homeowners insurance policy from plaintiff, Allstate Indemnity Company ("Allstate"), which covered property damage resulting from fire. (*Id.* ¶ 4.) Pursuant to the policy, Allstate paid the Lassos $1,375,323.70 for repairs, replacement, and other associated expenses, (*id.* ¶ 8), and "became subrogated to the rights and claims against any person or entity that may be liable for causing the fire loss," (*id.* ¶ 9).

The complaint alleges as follows. Defendant, ADT LLC ("ADT"),[1] had contracted with the Lassos in 2007 to install "a security system, monitoring for security alarm, police emergency,

---

[1] ADT states in its motion that it was "improperly named as ADT Security Services, Inc." (R. 8, Def.'s Mot. Dismiss 1.)

and fire alarm" in exchange for a monthly fee. (*Id.* ¶¶ 10-11.) The system was designed to monitor and transmit alarms that would notify ADT, a central monitoring station, and/or the fire department in the event of a fire or the detection of smoke. (*Id.* ¶ 19.)

In March 2013, the Lassos entered into a oral contract with ADT to repair or replace their first-floor smoke detector, which had been damaged by Mr. Lasso's misuse and thus was not covered by the contractual limited warranty, and restore the fire detection system to "full operational status." (*Id.* ¶¶ 12-13, 55.) ADT replaced the first-floor smoke detector/alarm, but did not finish all the necessary repairs. (*Id.* ¶ 14.) Before leaving, ADT advised the Lassos that the upstairs detector/alarm still had to be replaced "due to the fact that both detectors/alarms worked together to operate," but it failed to advise the Lassos "of the repercussions of the incomplete repair, only that ADT would return to complete the necessary repairs." (*Id.* ¶¶ 15-16.) When ADT left their home, the Lassos believed that they had "a completely operational, functioning and monitored fire alarm and smoke detection system," because ADT did not advise them to the contrary. (*Id.* ¶ 17.) ADT never returned to complete the stated necessary work to ensure that the detectors worked together, "further reinforcing the Lassos' belief" that the system was "fully functioning," (*id.* ¶ 18), and it never alerted the Lassos that the fire detection system "was non-operational and not monitored despite its being fully aware it never completed the necessary repairs of March 2013," (*id.* ¶ 20).

No one was at home when the fire started on October 25, 2013. (*Id.* ¶¶ 21-22.) When Mrs. Lasso returned and saw that the kitchen area was on fire, she was relying on the fire detection and notification system but was unaware that the system was inoperable and had failed to notify ADT, the monitoring entity, or the fire department. (*Id.* ¶¶ 24-25.) As a result, the Lassos' home sustained "severe property damage, beyond what would have been sustained had

the fire detection system been fully operational and performing as promised by ADT." (*Id.* ¶ 26.)

Allstate seeks to recover from ADT the sum that Allstate paid to the Lassos under the homeowners insurance policy.[2] The complaint contains six counts: negligence (Count I); gross negligence (Count II); breach of implied warranty (Count III); consumer fraud (Count IV); breach of contract (Count V); and strict liability (Count VI).

ADT moves to dismiss the complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to limit plaintiff's recoverable damages to $500.

## DISCUSSION

**A.     Legal Standards and Applicable Law**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

---

[2]As the Lassos' subrogee, Allstate steps into their shoes and can enforce only those rights that the Lassos could enforce. *See, e.g.*, *Equistar Chems., LP v. Hartford Steam Boiler Inspection & Ins. Co. of Conn.*, 883 N.E.2d 740, 748 (Ill. App. Ct. 2008).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

District courts exercising diversity jurisdiction must apply the choice-of-law rules of the forum state to determine what substantive law governs the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties do not address this threshold issue, but they both rely on Illinois law. Therefore, the Court will apply Illinois law. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (the court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a "reasonable relation" to their dispute).

**B.     Contractual Waiver of Subrogation**

First, the Court must address the 2007 "Residential Services Contract" (the "Contract") between ADT and the Lassos, which is attached as Exhibit A to ADT's memorandum in support of its motion to dismiss.[3] Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Plaintiff does

---

[3]The copy of the Contract that ADT originally filed is illegible. (R. 9-1.) At the Court's request, ADT later submitted a legible version. (R. 19.) The Contract was signed by Kathy Lasso; on the "customer name" line, it lists Giovanni Lasso. (R. 19 at 1.)

not object to the Court's considering the Contract. Because the Contract is referred to in the complaint and central to plaintiff's claims, the court will consider it without converting ADT's motion into a motion for summary judgment. *See Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013).

Pursuant to the Contract, ADT and the Lassos agreed that ADT would install and monitor a burglary and fire alarm system at the Lassos' home. ADT asserts that the Contract contains a waiver of subrogation rights that bars Allstate's claims or, alternatively, contains a limitation of liability that limits Allstate's damages to $500. (R. 9, Def.'s Mem. Supp. Mot. 5-9.) The threshold question is whether the Contract applies to the 2013 repair efforts. In support of its contention that the Contract applies, ADT cites the following provision:

> **REPAIRS AND PARTS REPLACEMENT.** At your request we will repair or replace the equipment we provided at our then-prevailing prices after the Limited Warranty and, if purchased, the Extended Limited Warranty expire. At your request we will also repair or replace anything excluded from the Limited Warranty and Extended Limited Warranty at our then-prevailing prices.

(R. 19 at 5, ¶ 17.)

In response, plaintiff asserts that this provision of the Contract does not apply to the repair work performed in 2013 because its claims arise from a "separate agreement" that the Lassos and ADT entered into for that work. (R. 16, Pl.'s Resp. 4, 6-8.) In plaintiff's view, paragraph 17 is "indefinite" and unenforceable in that it "contemplates a future agreement and leaves crucial terms, such as price, product and timeframe, to future negotiation between ADT and its customers." (*Id.* 8.) The Court is unpersuaded. First, as ADT notes, plaintiff does not allege that the Contract was not in effect at the time of the fire. Indeed, the Contract states that its initial term was for three years and that thereafter, it would automatically renew in thirty-day increments unless terminated by written notice. Furthermore, paragraph 17 does not

5

contemplate a "future agreement" and is not indefinite. It contemplates the customer's request for repair or replacement of equipment that had been provided pursuant to the Contract, at any time the Contract is in effect, and specifies that the cost to repair any equipment that was excluded from the Limited Warranty and Extended Limited Warranty would be what ADT was charging at the time. The Contract by its terms applied to the repair work at issue. Plaintiff's contention that the work was performed outside the scope of the Contract is rejected.

In support of its argument that Allstate's claims are barred, ADT argues that Allstate is bound by the Lassos' agreement in the Contract to waive all subrogation claims:

> **WE ARE NOT AN INSURER. WE ARE NOT AN INSURER AND YOU WILL OBTAIN FROM AN INSURER ANY INSURANCE YOU DESIRE. THE AMOUNT YOU PAY US IS BASED UPON THE SERVICES WE PERFORM AND THE LIMITED LIABILITY WE ASSUME UNDER THIS CONTRACT AND IS UNRELATED TO THE VALUE OF YOUR PROPERTY OR THE PROPERTY OF OTHERS LOCATED IN YOUR PREMISES. IN THE EVENT OF ANY LOSS OR INJURY TO ANY PERSON OR PROPERTY, YOU AGREE TO LOOK EXCLUSIVELY TO YOUR INSURER TO RECOVER DAMAGES. YOU WAIVE ALL SUBROGATION AND OTHER RIGHTS OF RECOVERY AGAINST US THAT ANY INSURER OR OTHER PERSON MAY HAVE AS A RESULT OF PAYING ANY CLAIM FOR LOSS OR INJURY TO ANY OTHER PERSON.**

(R. 19 at 4, ¶ 5.)[4] Courts applying Illinois law have upheld such subrogation waivers unless the specific fact situation makes enforcement unconscionable or its presence in the particular kind of contract is against public policy. *Bastian v. Wausau Homes, Inc.*, 635 F. Supp. 201, 203-05

---

[4]As a preliminary matter, ADT also cites the following provision: "**YOU ACKNOWLEDGE AND ADMIT THAT BEFORE SIGNING YOU HAVE READ THE FRONT AND BACK OF THIS PAGE IN ADDITION TO THE ATTACHED PAGES WHICH CONTAIN IMPORTANT TERMS AND CONDITIONS FOR THIS CONTRACT. YOU STATE THAT YOU UNDERSTAND ALL THE TERMS AND CONDITIONS OF THIS CONTRACT, INCLUDING, BUT NOT LIMITED TO, PARAGRAPHS 5, 6, 7, 8, 9, 10 AND 22.**" (R. 19 at 1.)

(N.D. Ill. 1986); *Hartford v. Burns Int'l Sec. Servs., Inc.*, 526 N.E.2d 463, 466 (Ill. App. Ct. 1988).

Allstate does not contend that the waiver is unconscionable or against public policy, but that it is unenforceable because Allstate has alleged "willful and wanton" misconduct, and "[e]xculpatory provisions are not enforceable in cases of willful and wanton conduct." (R. 16, Pl.'s Resp. 4-5.)  Allstate cites two decisions in support of its argument, *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137 (Ill. App. Ct. 2010), and *Cat Iron, Inc. v. Bodine Environmental Services*, No. 10 CV 2102, 2010 WL 3767986 (C.D. Ill. Sept. 28, 2010).  *Oelze* and *Cat Iron*, however, are distinguishable because they involved exculpatory provisions, not subrogation waivers.  As the *Bastian* and *Hartford* courts explained, subrogation waivers are not true exculpatory provisions.  They merely allocate risk of loss; they do not immunize the wrongdoer from all liability, nor do they require the injured parties to give up all their claims or leave them uncompensated.  *Bastian*, 635 F. Supp. at 203-05; *Hartford*, 526 N.E.2d at 466.  Plaintiff fails to cite any decisions applying Illinois law in which the court refused to enforce a subrogation waiver where willful and wanton misconduct was alleged.

In any event, plaintiff's attempt to plead willful and wanton conduct is to no avail because it does not plead that ADT breached any common-law duty that it owed to the Lassos. "Willful and wanton acts show 'actual or deliberate intent to harm' or, if not intentional, show 'an utter indifference to or conscious disregard for a person's own safety or the safety or property of others.'"  *Oelze*, 927 N.E.2d at 148 (quoting *Pfister v. Shusta*, 657 N.E.2d 1013, 1016 (Ill. 1995)).  Plaintiff points to its allegations that are intended to demonstrate that ADT acted with "utter indifference or conscious disregard" for the Lassos' lives and property. (R. 16, Pl.'s Resp. 5-6 (citing Compl. ¶¶ 14-15, 17-18, 20; *see also* ¶¶ 36-37).)  But the concept of

7

willful and wanton misconduct arises only in relation to torts. A breach of contract does not become a tort just because the breach was allegedly "willful and wanton." *See Northbound Grp., Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 972 (N.D. Ill. 2013) (citing *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 185 (Ill. 1986)). As discussed below, Allstate invokes the concept of willful and wanton misconduct but fails to identify any breach of a legal duty that is independent of ADT's contractual duties.

Because plaintiff's claims are barred by the subrogation waiver in the Contract, the complaint will be dismissed with prejudice.[5] Even if the waiver did not bar plaintiff's claims, plaintiff has failed to state claims for negligence, gross negligence, breach of implied warranty, and consumer fraud, as discussed below.

## C. Negligence and Gross Negligence (Counts I and II)

In Count I, Allstate alleges that its damages as the Lassos' subrogee resulted from ADT's failure to "exercise reasonable care in installing, servicing and maintaining the fire detection system at the Lasso residence." (Compl. ¶ 28.) In Count II, Allstate alleges that ADT acted with "conscious disregard and/or utter indifference" by failing to complete the repairs of the fire detection system and by failing to warn the Lassos about the problems with the system. *(Id*. ¶¶ 35-36.)

To state a claim for negligence under Illinois law, a plaintiff must plead that the defendant owed plaintiff a duty, it breached that duty, and the breach proximately caused plaintiff's injury. *See Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012). ADT contends that plaintiff fails to state a negligence claim because the claim is actually "premised

---

[5] In light of this ruling, the Court need not discuss ADT's alternative argument that the Contract limits Allstate's damages to $500.

upon ADT's alleged failure to adequately perform its contractual obligations" and fails to allege any duty that is independent of the parties' contract. (R. 8, Def.'s Mot. Dismiss 1.)

ADT cites *Endencia v. ADT Security Services, Inc.*, 08 C 4541, 2008 WL 4833111, at *2 (N.D. Ill. Oct. 28, 2008), for the proposition that when a relationship is governed by contract and there is no other relationship between the parties, "the defendant owes a plaintiff no duty other than that created by the contract." (R. 9, Def.'s Mem. Supp. Mot. 11.) In *Endencia*, the plaintiff had contracted with ADT to monitor the burglar alarm at her veterinary clinic and brought a negligence claim against ADT after she allegedly discovered that the clinic had been vandalized yet ADT had never detected a security breach. *Id.* at *1. The court granted ADT's motion to dismiss plaintiff's negligence claim because there were no allegations suggesting that the claim was based on anything other than the parties' contractual relationship or that ADT had any duty to plaintiff that was independent of the contract. *Id.* at *2 (citing *Pick Fisheries, Inc. v. Burns Elec. Sec. Servs., Inc.*, 342 N.E.2d 105, 107-08 (Ill. App. Ct. 1976) (where "without the contract[] there would be no relationship between the parties," the nature of the duty must be determined by reference to the contract)).

The Court agrees with ADT that the complaint states a claim for breach of contractual duty only and fails to plausibly allege any independent tort duty. Allstate argues that the complaint states a negligence claim because it alleges that ADT voluntarily undertook repairs that were not covered by the Contract and thus "voluntarily assumed" a duty that did not previously exist. (R. 16, Pl.'s Resp. 8-9.) This contention is belied by the complaint's allegations. Allstate does not allege that ADT engaged in a voluntary undertaking to do the March 2013 work; rather, it alleges that the Lassos *contracted with* ADT to do the work.

9

(Compl. ¶¶ 13, 55.) Moreover, as discussed above, the work was performed pursuant to the Contract.

Because Counts I and II are based solely on contractual duties, they fail to state claims for negligence.

**D.     Breach of Implied Warranty (Count III)**

Allstate also fails to state a claim for breach of implied warranty. In Count III, Allstate alleges that ADT breached its implied warranty to conduct repairs to the fire detection system "in a skillful, careful, diligent and workmanlike manner." (*Id.* ¶ 43.) ADT contends that plaintiff has failed to state a claim for breach of implied warranty because Illinois law does not recognize an implied warranty in a contract for services. (R. 9, Def.'s Mem. Supp. Mot. 10.) ADT acknowledges that Illinois courts have recognized certain implied-at-law warranties, namely a warranty of habitability for residences and, in the case of construction contracts, a warranty that construction work will be performed in a workmanlike manner, but contends that other than in these two strictly-defined circumstances, Illinois has limited the recognition of implied warranties to the sale of goods. (*Id.* (citing *Am. Labelmark Co. v. Akiyama Corp. of Am.*, No. 93 C 3208, 1993 WL 460838, at *2 (N.D. Ill. Nov. 5, 1993)).

Plaintiff does not contend that the Lassos contracted with ADT for the provision of goods.[6] It does argue that the implied warranty of workmanship has been recognized with respect to contractors responsible for services such as stevedoring. (R. 16, Pl.'s Resp. 10 (citing *Orgulf Transp. Co. v. Hill's Marine Enters.*, 188 F. Supp. 2d 1056, 1064 (S.D. Ill. 2002) (recognizing possible claim for implied warranty of workmanlike performance against

---

[6]The Contract is titled "Residential Services Contract." Furthermore, it states that the Lassos' security system was "ADT-owned," as opposed to "Customer-Owned." (R. 19 at 1.)

stevedore) and *Waterman S.S. Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 423 (1960) (recognizing claim for breach of implied warranty of workmanlike service against stevedoring contractor)).) Citing *Vicorp Restaurants v. Corinco Insulating Co.*, 584 N.E.2d 229, 234 (Ill. App. Ct. 1991), plaintiff also argues that Illinois courts have not limited the warranty to construction contracts, but, regardless, the Court can reasonably infer that "installation of the alarm system involved more than just affixing the smoke detector to the ceiling and plugging it in," thus constituting "construction work" that is covered by an implied warranty of workmanship. (*Id.* 10.)

The Court agrees with ADT that Illinois courts have not recognized an implied warranty of workmanship under the circumstances alleged in the complaint. *See Am. Labelmark*, 1993 WL 460838, at *2. Allstate fails to cite an Illinois case that is on point. *Orgulf* and *Waterman* applied federal admiralty law, not Illinois law. And the court in *Vicorp* did not extend the warranty beyond construction contracts; that case involved a construction contract. *See* 584 N.E.2d at 233-34 (describing general contractor's claim for breach of implied warranty against a subcontractor for allegedly faulty workmanship in the installation of a concrete floor of a freezer addition to a warehouse). Allstate cites no authority for the proposition that the repair of an alarm system constitutes "construction work" under Illinois law.

Even if Illinois recognized an implied warranty in this context, the Lassos disclaimed it in the Contract. The Contract states:

**NO OTHER WARRANTIES.** OTHER THAN THE LIMITED WARRANTY AND, IF PURCHASED, THE EXTENDED LIMITED WARRANTY,[7] WE MAKE NO GUARANTEE OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. YOUR EXCLUSIVE WARRANTY REMEDY IS SET FORTH ABOVE. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES MAY NOT ALLOW US TO LIMIT THE LENGTH OF AN IMPLIED WARRANTY OR TO EXCLUDE OR LIMIT INCIDENTAL OR CONSEQUENTIAL DAMAGES. THE LAWS OF THE STATE WHERE THIS CONTRACT WAS SIGNED WILL DETERMINE WHETHER THESE LIMITATIONS AND EXCLUSIONS APPLY.

(R. 19 at 4, ¶ 16.) Allstate contends that this warranty disclaimer is unenforceable in light of its allegations of willful and wanton misconduct. (R. 16, Pl.'s Resp. 4-5.) This is the same argument the Court considered and rejected above with respect to the subrogation waiver.

### E.    Consumer Fraud (Count IV)

Count IV is a claim that ADT violated the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/2, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce." Allstate alleges that ADT violated the ICFA by failing to "adhere to its indication" that it would properly inspect, install, and monitor the Lassos' fire detection system; omitting its

---

[7]The Contract's limited warranty covered repair or replacement of parts of the system only during the first three months after installation. With a number of exclusions, the extended limited warranty covered repair or replacement of parts due to ordinary wear and tear. (R. 19 at 4, ¶¶ 13-15.)

"lack of commitment" to perform the requested services; charging a monthly fee for services that were not rendered; failing to tell the Lassos that the system was inoperable; failing to return to complete the necessary repairs; and misleading the Lassos to believe that even though the repairs were incomplete, the system would be fully operational. (Compl. ¶ 49.)

ADT argues that Count IV should be dismissed because it is simply a restatement of Allstate's contract claim. (R. 9, Def.'s Mem. Supp. Mot. 13.) *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act."). Plaintiff does not respond to this argument, and thus abandons the claim. *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion amounts to abandonment of claims).

Even if plaintiff had not abandoned this claim, the Court would dismiss it. For the most part, ADT's alleged misrepresentations amount to the mere failure to perform its contractual obligations and therefore cannot support a fraud claim. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. Greenberger alleges that GEICO never intended to restore his car to its preloss condition and failed to disclose that it regularly breaches this contractual promise. These are breach-of-contract allegations dressed up in the language of fraud. They cannot support statutory or common-law fraud claims.") (citation omitted). Plaintiff's ICFA claim rests largely on the same factual foundation as its breach of contract claim, and to that extent fails to state a claim for violation of the ICFA. To the extent that Allstate has attempted to allege a misrepresentation that is not simply a reformulated claim for breach of contract, it has failed to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen*

*Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (when an ICFA claim alleges deception, Rule 9(b)'s heightened pleading standard applies).

## CONCLUSION

For the reasons set forth above, the motion of ADT LLC to dismiss the complaint [8] is granted, and the complaint is dismissed with prejudice.

**SO ORDERED.**                          **ENTERED:**    **June 17, 2015**

_____
**JORGE L. ALONSO**
**United States District Judge**